HANNAWAY ET AL., APPELLANTS, *v.* SCHIPFER FOOD BROKERAGE CO., APPELLEE.

(No. 3627—Decided August 10, 1971.)

*Messrs. Pickrel, Schaeffer & Ebeling, Mr. Gordon H. Savage* and *Messrs. Folkerth, Calhoun, Webster, Maurer & O'Brien,* for appellants.

*Messrs. Smith & Schnacke* and *Mr. Lloyd O'Hara,* for appellee.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Montgomery County.

For some time prior to January 1, 1967, John and Robert Hannaway were the operators of a food brokerage business known as M. Hannaway Co. In November 1966, John Schipper, president of the Schipper Food Brokerage Co., approached the Hannaways with a view to purchasing the M. Hannaway Co.

After some negotiations, the parties entered into a sales contract whereby M. Hannaway Co. sold its assets to Schipper Food Brokerage Co. for $30,800. Schipper paid the Hannaways $1,900 at the time of closing and agreed to pay $1,900 within 90 days thereafter. Under the terms of the agreement, which was executed on December 27, 1966, the balance of $27,000 was to be paid in annual installments of $3,000 beginning January 2, 1968, the balance due the Hannaways being secured by a note.

At the same time, Schipper entered into employment contracts with the Hannaway brothers, each contract calling for five years of employment with Schipper Food Brokerage Co. at salaries of $12,000 per annum, and containing a provision that if Schipper terminated the employment of either Hannaway without reasonable cause, the Hannaway so affected would be entitled to severance pay of $12,000. On the other hand, the promissory note in the amount of $28,900, given by Schipper to secure the balance due under the sales contract, contained a provision that a breach of any of the agreements by John or Robert Hannaway would result in a forfeiture of their rights to payment of the balance due thereunder.

On January 1, 1967, the M. Hannaway Co. discontinued its operation, and the Hannaway brothers became employees of Schipper under the terms of the employment contracts.

The evidence bearing upon the relationship of the parties after January 1, 1967, involves considerable conflict, each side claiming, in one way or another, that the other side breached the contracts, but in any event, the

relationship established by the contracts ended on June 1, 1967.

On or about June 9, 1967, John Schipper delivered letters to both John and Robert Hannaway terminating their employment contracts, and at the same time delivered to Robert Hannaway a written agreement calling for rescission and cancellation of all agreements of the parties. The proposed agreement was not signed by either of the Hannaways, but thereafter, Robert Hannaway again took over most of the accounts which the M. Hannaway Co. had before the merger. John Hannaway did not re-enter the business operation, but went to work instead for the Pickerington Creamery Company.

In this appeal, the parties have discussed the evidence at considerable length, but the dominant issue reflected by the record is essentially one of trial procedure.

On February 13, 1968, the plaintiffs filed a petition which sets forth three causes of action. The first was for a breach of the sales contract. The second seeks termination pay for John Hannaway, and the third cause of action claims termination pay for Robert Hannaway. The relief sought in each cause of action is a judgment for money only.

On April 17, 1968, the defendant filed an answer and cross-petition. The answer alleges, among other things, that the plaintiffs and defendant agreed to rescind the sale of the brokerage business and to terminate all agreements executed in connection therewith, and the cross-petition sets forth four causes of action seeking money only for alleged breaches of the contracts.

The reply filed by the plaintiffs on May 24, 1968, did not enlarge the scope of the action, and upon the issues thus drawn, the cause proceeded to trial before a jury on November 24, 1969.

At the conclusion of all the evidence, the trial court found that the sales agreement and the employment contracts were rescinded by the acts and conduct of the parties, and removed the case from the consideration of the jury.

Thereafter, by entry dated January 21, 1970, the

Court of Common Pleas declared the three contracts rescinded, dismissed with prejudice all three causes of action alleged in plaintiffs' petition, dismissed all four causes of action alleged in defendant's cross-petition, rendered judgment for plaintiffs in the sum of $1,039 93, and assessed costs equally against plaintiffs and defendant.

The controlling question in this appeal is whether the trial court was justified in removing this case from consideration of the jury on the ground that the three contracts were rescinded by the acts and conduct of the parties.

In this regard, it is noticeable that the parties themselves did not affirmatively seek a rescission of the contracts in their pleadings. Nor did the plaintiffs or defendant pursue this theory with much enthusiasm during the course of the trial. On the contrary, each side sought money damages for breach of contract, and there was no equitable relief necessary as a predicate to the relief sought in the pleadings.

Where a contract has been rescinded by acts of the parties and an action subsequently brought for the recovery of money, it is not essential that the rescission of the contract be confirmed by judicial decree in order to recover a money judgment. See *Lydle* v. *Scott* (1957), 82 Ohio Law Abs. 357.

The issues presented and relief required *at the time of trial* are determinative of whether an action is equitable or legal. *Mahoning National Bank* v. *Youngstown* (1944), 143 Ohio St. 523; *Taylor* v. *Brown* (1915), 92 Ohio St. 287.

In the *Taylor* case, the plaintiffs filed an action to recover money and also sought an accounting, a rescission of a contract and other equitable relief. The Supreme Court held that the action was one at law, triable to a jury, and declared that the prayer for equitable relief of accounting and rescission was unnecessary.

Likewise, in the present case, the judicial rescission at the time of trial was mere surplusage. By that time, the contractual engagement of the parties had long since passed, and they wanted damages in money. An action to

recover money on a contract which has been rescinded by the acts and conduct of the parties is one peculiarly within the jurisdiction of courts of law. See 95 A. L. R. 1003.

Upon the entire record in this case, it is understandable that a court would want to substitute its process of reasoning for that of a jury. Almost every trial court, at one time or another, has been so inclined. However, such a procedure is without legal sanction where disputed issues of fact arise in actions for the recovery of money only. R. C. 2311.04; *Monroe* v. *Golner* (1955), 101 Ohio App. 290.

Accordingly, the judgment must be reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

SHERER, P. J., and CRAWFORD, J., concur.